IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| WILLIAM HENRY BROWN, § | | |
| TDCJ-CID # 1188215, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION V-03-122 | |
| § | | |
| JOE SIMMONS, et al., § | | |
| § | | |
| Defendants. § | | |

**MEMORANDUM OPINION AND ORDER**

William Henry Brown, a convicted felon and prisoner of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a civil rights suit against several TDCJ-CID officials. He subsequently filed a response to the court's Order for More Definite Statement (Docket Entry No. 3) and amended his complaint (Docket Entry No. 4) to name only one defendant, Joe Simmons, a supervisor at the TDCJ-CID Stevenson Unit Boiler Room. The court ordered Simmons to respond to the complaint. Simmons has filed a Motion for Summary Judgment (Docket Entry No. 26), and Brown has filed a response (Docket Entry No. 27). After reviewing the pleadings and the records, the court finds that Simmons's motion should be granted and that this action should be dismissed.

**I. Claims and Allegations**

Brown claims that Simmons was deliberately indifferent to his safety and health needs by subjecting him to dangerous work conditions and then delaying Brown's access to medical attention after he was injured. The incidents in question occurred at approximately 12:10 p.m. on January 10,

2002, when Brown was working for Simmons at the Stevenson Unit boiler room. *See* Docket Entry No. 1, Original Complaint, at 4; Docket Entry No. 3, Plaintiff's More Definite Statement. On that day, Simmons told Brown and another inmate that they were going to change the temperature gauges on the heat exchangers in the boiler room. *Id*. at 1. Brown asserts that the proper procedure for such an operation would have been to isolate the circulation pump and evacuate the exchanger thereby relieving the excessive pressure; however, Simmons ignored this method and attempted to use a shortcut. *Id.* Although the two inmates expressed their concerns to Simmons, he chose to follow his own method thinking that he could handle the gauge following his own course of action. *Id.* at 4-5.

Simmons instructed Brown to place a plastic bag over the electrical controls to prevent them from getting wet. *Id.* at 2. Brown set about his task and was leaning over about three to five feet from Simmons when Simmons started to unfasten the temperature gauge. When Brown stood up, he heard a popping noise which was followed by a release of the hot water from the loosened device. The water sprayed and burned Brown's neck, head, and the right side of his face. Brown immediately ran for cold water to splash the injured areas. *Id.*

A few minutes later, Simmons walked up to Brown, examined his face and asked him about his condition. *Id.* at 3. Brown replied that he wanted to go to the infirmary because he needed medical help. Simmons ordered Brown to wait until a group touring the prison had left the building. *Id*. at 3-4. Brown declared that he was in pain and needed immediate attention; however, Simmons continued to insist that he wait until the group left. *Id*. at 4. Brown disobeyed Simmons's order and left the boiler room in search of someone who could take him to the infirmary. When he did not find anyone other than other prisoners, Brown got some aloe and rubbed it on the burned areas. He then

changed out of his jumpsuit and into his regular uniform and left for the infirmary. Simmons caught up with Brown, and the two went to the medical department together. *Id.* at 4.

Brown asserts that he suffered second degree burns on the right side of his face, head, and neck. *Id*. at 5. The medical department cleaned and dressed the burned areas. *Id*. at 8. Brown returned to the medical department for the next several days for further cleaning and redressing, and he was allowed to miss work during that time due to the risk of infection. *Id.* at 5, 10. He was also given Tylenol 3 during the three day period of treatment. *Id*. at 9.

Brown admits that his burns healed well and that there are no scars. *Id*. at 5. He concedes that there are no lingering effects of the accident that interfere with his daily activities although he has become more safety conscious. *Id*. at 11. He also concedes that the medical care was adequate. *Id*. at 7. However, he complains that Simmons denied him immediate medical care when he delayed his access to the medical clinic after he was burned. *Id*. at 6. He further complains of the pain and suffering he experienced from the burns as well as the mental anguish associated with the burns which could have affected his eyes and one of his ears. *Id*. at 11. Brown seeks monetary damage for the pain and suffering he has endured. Docket Entry No. 1, at 4.

## II. **Summary of the Defendant's Arguments and Evidence**

Simmons argues that he is entitled to Eleventh Amendment Immunity from claims against him in his official capacity. He also argues that he is entitled to summary judgment regarding Brown's deliberate indifference claim. Simmons further contends that he is entitled to qualified immunity.

In support of his argument, Simmons presents the following evidence attached to his motion (Docket Entry No. 26):

    Exhibit A:    Affidavit of Joe Simmons

    Exhibit B:    Brown's TDCJ-CID Medical Records for January 10, 2002

Simmons's argument focuses on the response and treatment after the accident. However, Simmons's affidavit (Exhibit A) does include information relating to the January 10, 2002 boiler room accident involving Brown. Simmons states that he was working with Brown and another inmate in the Stevenson Unit boiler room at around 12:30 p.m. on that date. *Id*. Simmons noted that some of the valves were leaking at the time. Exhibit A, at 1. Simmons and the other inmate were in the process of removing wall thermometers while Brown was cleaning the floor. *Id*.

Unaware that Brown was about to walk near a heat exchanger, Simmons pulled out the well for the exchanger. Simmons's action caused the valve to release steam and spray Brown on the head and chest area as well as one of Simmons's legs. *Id.* When he realized what had happened, Simmons allowed Brown to soak his face in cool water at a nearby sink. *Id*. While Brown was rinsing his face, an inspection team came into the boiler room and began asking Brown questions about boiler room procedure. Simmons answered the questions and turned back to Brown. He studied Brown's face and noted that it was red but not blistered. Although Brown was holding and rubbing his face, he appeared calm leading Simmons to presume that the burns were not serious enough to require immediate medical attention. *Id*. at 2.

When Brown told Simmons that he wanted to put some aloe vera on his face, Simmons escorted him to a nearby building where Brown found an aloe plant and used it to medicate his

burns. *Id*. About ten minutes later, Brown reported that the aloe was not effective and that his face was still bothering him. *Id*. Simmons responded by taking Brown to the medical department. *Id*.

Brown walked into the medical department and was seen at 12:35 p.m. on January 10, 2002. Exhibit B, Medical Record, at 1. The examining nurse noted that Brown had hot water burns on the right hand side of his face and neck with small blisters on the right brow area. *Id*. There was also a reddened area on the right side of his face. *Id*. An ice pack was applied to Brown's face and neck and he was turned over to a physician's assistant (PA) for more care. *Id*. The PA also observed the aforementioned blisters and some redness. *Id.* at 1-2. Brown reported some blurred vision to his right eye, but said that most of the steam hit his right ear and neck and that it did not get in his eye. *Id.* at 2. The right eye appeared undamaged. Other than the second degree burns with redness, blisters, and complaints of stinging sensations, the exam revealed no abnormalities. *Id*. at 1. Brown was prescribed medication and dressings for the next three days. He was also given a three day pass from work. *Id*. Browns's wounds healed and left no scars. Docket Entry No. 3, at 5.

Simmons acknowledges that Brown was burnt by the steam, and admits that he did sustain second degree burns to his face. He further concedes that the accident happened while Brown was under his custodial supervision. However, Simmons's evidence implies that the accident was the result of a mistake in judgment rather than any deliberate action on the part of Simmons or any other individual. Simmons contends that he did not ignore a serious medical need after the accident happened. He points to the fact that Brown was immediately able to splash cool water on the affected areas and that he was subsequently allowed to apply aloe to his face and neck. Although at first he did not agree that Brown needed immediate medical attention, Simmons did escort Brown

to the medical department when the latter insisted that he was still in pain. Simmons points out that the evidence shows that no more than 25 minutes elapsed between the time of the accident and the time Brown arrived at the infirmary. Simmons further observes that the accident resulted in no permanent injuries. Simmons contends that the small delay did not deny Brown any attention that significantly injured him or adversely affected the subsequent healing process.

Simmons contends that there is no evidence of deliberate indifference and that he is entitled to qualified immunity because his actions were objectively reasonable. Therefore, he requests that this action be dismissed with prejudice.

### III. Summary Judgment Standards

In deciding a motion for summary judgment, the Court must determine whether the pleadings and records indicate if there is a genuine issue regarding any material fact and whether the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001). To meet this burden, the movant must present evidence that shows that the nonmovant cannot carry its burden of proof at trial. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The movant may accomplish this by showing that the non-moving party has presented no evidence in support of his claim. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Once the movant has met this burden, the non-movant must present specific facts showing that there is a genuine issue for trial; otherwise, summary judgment will be entered in favor of the movant. *Id.*

The court construes the evidence such that the nonmoving party is favored and does not weigh the evidence, assess its probative value, or resolve any factual disputes. *Williams v. Time Warner Operation, Inc*., 98 F.3d 179, 181 (5th Cir. 1996). However, the nonmovant cannot rely on "conclusory allegations" or "unsubstantiated assertions" to establish that there is a triable issue. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 (5th Cir. 1996). Nor is the nonmovant's burden satisfied by casting "some metaphysical doubt as to material facts" or where "only a scintilla of evidence" has been brought forth. *Fiesel v. Cherry*, 294 F.3d 664, 667 (5th Cir. 2002); *Spectators' Communication Network Inc. v. Colonial Country Club*, 253 F.3d 215, 219 (5th Cir. 2001). Factual controversies will be decided in the nonmovant's favor only when both sides have presented evidence showing that there is an actual controversy. *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir. 1998), *citing Little*, 37 F.3d. at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *Id*.

### IV. Analysis

To the extent that Brown asserts a complaint against Simmons in his official capacity, such claims are considered to be claims against the State of Texas. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 n.3 (5th Cir. 1996). The Eleventh Amendment bars civil rights suits for money damages against the State of Texas and its officials in their official capacities. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Therefore, the court will only consider those claims brought against Simmons in his individual capacity.

There are two claims to Brown's complaint. His first claim is that Simmons was deliberately indifferent to his need for safety when he subjected him to dangerous work conditions. His second

claim is that Simmons was deliberately indifferent to his need for medical care by delaying his access to such care.

      A.      <u>Work Conditions</u>

As a prisoner and convicted felon, Brown has a right, under the Constitution's Eighth Amendment, not to be knowingly exposed to conditions which are clearly dangerous to his health or safety. *See Farmer v. Brennan*, 114 S.Ct. 1970 (1994). To prevail on an Eighth Amendment claim, Brown must present evidence demonstrating that Simmons was 'deliberately indifferent' to his serious medical or health needs. *Estelle v. Gamble*, 97 S.Ct. 285, 292 (1976). To establish deliberate indifference, Brown must show that Simmons (1) was aware of facts from which an inference of an excessive risk to Brown's health or safety could be drawn, and (2) that he actually drew an inference that such potential for harm existed. *Palmer v. Johnson,* 193 F.3d 346, 352 (5th Cir. 1999), *citing Bradley v. Puckett*, 157 F.3d 1022, 1027 (5th Cir. 1998).

A prison official has a duty to protect inmates under his supervision from obvious dangers, including those that might be present in a prison work area. *Jackson v. Cain*, 864 F.2d 1235, 1247 (5th Cir. 1989). However, there is no constitutional requirement that prison work supervisors observe all health and safety standards observed by private employers. *Sampson v. King*, 693 F.2d 566, 569 (5th Cir. 1982). To assert a claim regarding a prisoner's work conditions, the plaintiff must show that the conditions were clearly dangerous to his health and that the defendant was aware of the imminent dangers and knowingly ignored them. *Lewis v. Lynn*, 236 F.3d 766, 767-68 (5th Cir. 2001). The Court employs a "totality of conditions test" in determining whether prison work conditions are cruel and unusual. *Jackson*, 864 F.2d at 1245.

The uncontroverted record presents facts indicating that Simmons and the two inmates were going about a normal maintenance procedure at a prison boiler room. Simmons attempted to change a temperature gauge using a method that he thought was expedient. While in hindsight Simmons should have used proper procedures in changing the apparatus, the record shows that his conduct was at the most negligent and that he did not violate Brown's constitutional rights. *Walker v. Reed*, 104 F.3d 156, 158 (8th Cir. 1997). Simmons's actions while arguably unprofessional (*See* Exhibit D attached to plaintiff's response, Docket Entry No. 27) do not constitute 'wanton' conduct necessary to establish deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). It is not enough to show that Simmons was negligent in carrying out the work; it must be proven that he deliberately ignored the risks to Brown's health and safety after he was made aware of them. *Palmer v. Johnson,* 193 F.3d 346, 352 (5th Cir. 1999). Because there is no showing of deliberate indifference regarding Simmons's work procedures, the summary judgment evidence does not establish that Brown's constitutional rights were violated when he was accidentally burnt while working in the boiler room. *See Jackson*, 864 F.2d at 1245, *citing Sampson*, 693 F.2d at 569.

    B.    <u>Medical Care</u>

Brown's claim regarding medical care centers on his allegation that Simmons delayed his access to treatment. It is undisputed that Brown was able to immediately splash cool water on the affected areas and that he later applied aloe vera to the burns. Simmons asserted that at first he did not believe that Brown's injuries needed immediate attention but later he did assist him in going to the infirmary. Finally, both parties agree that medical personnel saw Brown and attended to his injuries within 25 minutes of their occurrence. The treatment provided was sufficient, and Brown's injuries healed well with no permanent scars or other dire consequences.

Simmons cannot be found to have violated Brown's right to medical care when the evidence indicates that he was not immediately aware of the seriousness of Brown's burns. *See Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992) (holding that a guard did not deny or delay access to medical care when he ordered a prisoner with two ankle fractures to walk between 150 and 440 yards to the prison hospital without assistance). A prison official is not deliberately indifferent to an inmate's medical or safety needs when he makes a mistake in assessing those needs. *Sibley v. Lemaire,* 184 F.3d 481, 489 (5th Cir. 1999). *See also Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998).

Apart from Simmons's real error in judgment, it is apparent that the delay did not last long and that Brown was taken to the infirmary. The record of medical care provided to Brown after his injury serves to undermine his claim of deliberate indifference. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.") (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993)). Moreover, both parties agree that the burns healed well and Brown's injuries had no lasting effect. *See* Docket Entry No. 27, Exhibit D. Brown cannot prevail on the basis of his alleged mental anguish. *See* 42 U.S.C. § § 1997e (e). Consequently, Brown's claim that Simmons delayed his access to medical treatment shall be dismissed pursuant to FED. R. CIV. P. 56 because there is no indication that he suffered any substantial or lasting harm. *Mendoza*, 989 F.2d at 195.

The record has shown that Brown has no cause of action against Simmons and that Simmons is entitled to summary judgment under FED. R. CIV. P. 56. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001).

## V. Conclusion and Order

The court **ORDERS** the following:

1. The defendant's motion for summary judgment (Docket Entry No. 26) is **GRANTED.**

2. This action is **DISMISSED** with prejudice. FED. R. CIV. P. 56(c).

**SIGNED** on this 23rd day of February, 2007.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE